1

2

3

4

5

6

7

8      **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA**

10     **SOUTHERN DIVISION**

11

12     EDWARD REY SANCHEZ,              )     No. SA CV 17-1347-PLA
                                       )
13              Plaintiff,             )     **MEMORANDUM OPINION AND ORDER**
                                       )
14         v.                          )
                                       )
15     NANCY BERRYHILL, DEPUTY         )
       COMMISSIONER OF OPERATIONS      )
16     FOR THE SOCIAL SECURITY         )
       ADMINISTRATION,                 )
17                                     )
                Defendant.             )
18     _____)

19                                    **I.**

20                              **PROCEEDINGS**

21
              Plaintiff filed this action on August 3, 2017, seeking review of the Commissioner's[1] denial
22
       of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income
23
       ("SSI") payments.  The parties filed Consents to proceed before a Magistrate Judge on August 23,
24

25     _____

26        [1]   On March 6, 2018, the Government Accountability Office stated that as of November 17,
       2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act
27     (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official.  As of
       that date, therefore, she was not authorized to continue serving using the title of Acting
28     Commissioner.  As of November 17, 2017, Berryhill has been leading the agency from her position
       of record, Deputy Commissioner of Operations.

2017, and September 14, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on July 13, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 25, 1954. [Administrative Record ("AR") at 209.] He has past relevant work experience as a security guard. [AR at 21, 60.]

On June 6, 2013, plaintiff filed an application for a period of disability and DIB, and on December 23, 2013, he filed an application for SSI payments, alleging in both that he has been unable to work since June 1, 2006. [AR at 10, 207-08, 209-15.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 154-55.] A hearing was held on February 24, 2016, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 38-64.] A medical expert ("ME") and a vocational expert ("VE") also testified. [AR at 41-48, 59-63.] On April 6, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from June 1, 2006, the alleged onset date, through April 6, 2016, the date of the decision. [AR at 10-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 205-06.] When the Appeals Council denied plaintiff's request for review on June 8, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

## B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date.[2] [AR at 12.] At step two for the DIB claim, the ALJ concluded that through the date last insured for his DIB claim, plaintiff had the medically

---

[2]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. [AR at 12.]

4

determinable impairments of degenerative disc disease of the thoracic and lumbar spine, hypertension, high cholesterol, depressive disorder, and anxiety disorder. [AR at 12.] She found that through the date last insured for his DIB claim, plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months" and, therefore, "did not have a severe impairment or combination of impairments." [AR at 13.] At step two for the SSI claim, she found that since the application date of December 23, 2013, plaintiff has the severe impairments of degenerative disc disease of the cervical spine; spondylosis at C4-C5, C5-C6, and C6-C7; status post cervical fusion on May 21, 2015; morbid obesity; diabetes mellitus; and chronic kidney disease. [AR at 14.] She further determined that since the application date for the SSI claim, plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity any of the impairments in the Listing. [AR at 16.] The ALJ determined that since December 23, 2013, the SSI application date, plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 4 hours out of an 8-hour workday with regular breaks; he can sit for 6 hours out of an 8-hour workday with normal workday breaks and he must be able to change position, one to three minutes, every hour; he can occasionally climb stairs, bend, balance, stoop, kneel, and crouch; he is precluded from climbing ladders, ropes, or scaffolds, crawling, reaching overhead with both upper extremities, walking on uneven surfaces, working at unprotected heights or around dangerous or fast moving machinery, extreme cold, and vibrating tools.

---

[3]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[AR at 16.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a security guard as generally performed in the regional and national economy.  [AR at 21, 60-62.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 1, 2006, through April 6, 2016, the date of the decision.  [AR at 22.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she:  (1) evaluated the testimony of the ME, Allen Levine, M.D.;  (2) evaluated the opinions of plaintiff's treating orthopedic surgeon, Muralidhara R. Raju, M.D.; and (3) rejected plaintiff's subjective symptom testimony.  [JS at 4.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    MEDICAL OPINIONS

### 1.    Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians."  <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009); <u>see also</u> 20 C.F.R. §§ 404.1502, 404.1527.[5]  The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

---

[5]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. <u>See</u> 20 C.F.R. § 404.1520c; <u>see also</u> 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein.  <u>See also</u> 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

case record.'" <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester</u>, 81 F.3d at 830; <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830; <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." <u>Trevizo</u>, 871 F.3d at 675 (citing <u>Ryan</u>, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> (citing <u>Ryan</u>, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. <u>Trevizo</u>, 871 F.3d at 676; <u>see</u> 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." <u>Id.</u>

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," <u>Lester</u>, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; <u>Bray</u>, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the

claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. The Opinions of Dr. Levine and Dr. Raju

At the February 24, 2016, hearing, Dr. Levine, a board certified orthopedic surgeon, testified that plaintiff's condition since May 2012 "warranted standing no more than two hours a day" and, because his cervical fusion surgery had not healed, he "would be limited to less than sedentary for one year after the May 2015 surgery and further evaluation would be needed in May 2016." [AR at 46-48.] In contrast, almost two years earlier, on May 7, 2014, Sarah Maze, M.D., board eligible in neurology, conducted a one-time consultative neurological examination. [AR at 419-22.] Dr. Maze opined that plaintiff had chronic pain syndrome, and could sit, stand, and walk for six hours in an eight-hour workday. [AR at 18, 419-22.] The ALJ noted that in 2014, the state agency medical consultants on initial review and reconsideration, "adopted Dr. Maze's opinion in concluding [plaintiff] could perform light exertional work." [AR at 18.]

The ALJ gave "significant weight, but not full weight, to the opinions of [Dr. Levine] (regarding [plaintiff's] limitations from May 7, 2012 through May 20, 2015), [Dr. Maze], and the State agency medical consultants on initial review and on reconsideration":

> The opinions of all of these physicians are generally consistent in that they all assess [plaintiff] is able to perform a range of work at the light exertional level[6] with

---

[6]    In fact, Dr. Levine, the ME, opined that plaintiff was capable of less than sedentary work from May 21, 2015, through May 21, 2016, and suggested that a further consultative examination with x-rays might be warranted after May 2016 to determine the status of plaintiff's fusion surgery. [AR at 46.] From May 7, 2012, until the date of the surgery, he opined that plaintiff would be able to lift twenty pounds occasionally and ten pounds frequently, "but not overhead as to avoid a cervical spine extension posture"; sit six out of eight hours with a sit/stand option, and not sitting longer than 45 minutes at a time; stand two out of eight hours, but not longer than 30 minutes at one time without the ability to sit for one to two minutes; walk two out of eight hours, but not longer than 20 minutes at one time without the ability to sit for one to two minutes, and to avoid uneven surfaces; could occasionally navigate stairs or ramps with a railing; occasionally kneel, crouch, or stoop, but not repetitively; should avoid ladders, scaffolds, heavy vibratory machinery, or dangerous equipment; and should avoid crawling, unprotected heights, or extreme cold exposure.

(continued...)

some differences in sitting, standing, walking, postural activities, and environmental settings. These opinions are all reasonable and supported by the record as a whole, but no single assessment has been completely adopted as the [RFC] determined herein. In order to give [plaintiff] the benefit of the doubt, the undersigned has adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole, showing positive musculoskeletal findings prior to the cervical discectomy and fusion, diagnostic evidence showing no solid fusion five months after surgery, and morbid obesity. These specific restrictions are also consistent with [plaintiff's] subjective statements regarding his inability to sit, stand, and walk for extended periods because of tingling sensations in his legs.

Little weight is given to Dr. Raju and Dr. Levine (regarding [plaintiff's] limitations from May 21, 2015 through May 21, 2016) who opined [plaintiff] can perform sedentary exertional work. This opinion is inconsistent with [plaintiff's] admission that, in regard to his neck, [he] felt better post-operatively than pre-operatively. In addition, [he] has had no follow-up visits for the cervical spine since July 2015.

[AR at 19-20 (citations omitted).]

### a. The Parties' Contentions

Plaintiff contends that the ALJ failed to explain why she rejected certain functional limitations as offered by these various sources. [JS at 6.] He notes that Dr. Levine looked at the entire record, including Dr. Maze's opinion issued a year prior to plaintiff's surgery that plaintiff could perform a range of light work, and submits that Dr. Maze's opinion "is remote at best and incomplete as she had no record to review." [JS at 7 (citing AR at 46-48, 422, 577-80).] He also argues that although Dr. Maze stated in her opinion that she had no explanation for plaintiff's pain, the x-ray and MRI requested by her office both reflected "the vacuum phenomenon" at L5-S1, along with "apophyseal joints . . . narrowed and sclerotic from L2-L5." [Id. (citing AR at 418).] He

---

[6](...continued)
[AR at 46-47.] He also stated that plaintiff should not be reaching overhead, "to avoid a cervical spine extension posture, and to avoid repetitive twisting of the cervical or lumbar spine"; had unlimited use of the upper extremities for fine and gross manipulation with the exception of the reaching overhead, which was "really not related to the arms as much as it is the neck." [AR at 47-48.] Although the ALJ included a limitation to standing or walking for six hours out of an eight-hour day with the ability to change positions one to three minutes every hour, he never asked the VE whether plaintiff could perform his past relevant work as a security guard if, as suggested by Dr. Levine, he was limited to *two* hours of standing or walking with the need for an hourly (or more frequent) sit/stand option when either sitting or standing/walking [AR at 48], or with the need to be able to shift positions at will, as suggested by Dr. Raju. [AR at 488-89.]

explains that a "vacuum phenomenon is where the disc degeneration is so advanced that the disc material is essentially sucked out leading to instability and severe pain." [Id. & n.1.] He argues that this phenomenon has been present since 2008 and that Dr. Levine specifically noted the severe spondylosis shown in the 2008 and 2012 MRIs and x-ray "that the ALJ and Dr. Maze ignored." [JS at 7-8 (citing AR at 43, 264, 418, 482-84).] He further argues that at the time that the state agency reviewing physicians issued their reports, they adopted Dr. Maze's opinion as the only opinion in the record at the time, and ignored the objective x-ray findings. [JS at 8.] Plaintiff submits that the positive musculoskeletal findings prior to his surgery, the evidence showing his cervical fusion had not fused by September 2015, and his morbid obesity, do not provide a reasonable rationale to accept or reject any medical opinion. [JS at 9.] He also argues that the ALJ incorrectly reported plaintiff's testimony to be that he cannot sit for more than 30 minutes without having to stand up, stand for more than 30-45 minutes before he has to move around, or walk for more than 20 minutes. [JS at 9 (citing AR at 53-54).] Instead, he states that he testified that he had been unable to perform even a part-time job that involved counting traffic at an intersection between two and four hours a day; he cannot stand and walk a block without stopping to get a breath; he can sit for "maybe 20 to 30 minutes if the chair is soft and comfortable" and would have to stand up after that period; and he could stand "maybe 30 to 45 minutes due to leg numbness." [Id. (citing AR at 52-54).]

According to plaintiff, the ALJ also ignored the fact that Dr. Levine's testimony is consistent with the opinion of plaintiff's treating orthopedic surgeon, Dr. Raju. [JS at 10 (citing AR at 577-80).] On September 9, 2015, Dr. Raju provided a medical source statement in which he stated that plaintiff is able to lift and carry ten pounds occasionally and less than ten pounds frequently; can sit, stand, and walk for two hours in an eight-hour workday; he should shift positions at will; he cannot twist, stoop, crouch, kneel, crawl, or climb ladders; he can occasionally climb stairs; and he may be absent from work more than three times a month. [JS at 10 (citing AR at 18-19, 488-90).] Plaintiff concludes that the ALJ failed to articulate sufficient rationale as to why she rejected standing limitations that differed "between Dr. Maze and Drs. Levine and Raju." [JS at 11.] With respect to the alleged lack of medical records after July 2015 as noted by the ALJ, plaintiff

explained that after July 2015 he received continued care with Dr. Raju "as evidenced by Dr. Raju's report dated September 29, 2015" [see AR at 488-90], but was otherwise "distracted with Stage 4 kidney disease [as] noted in his emergency room event of September 18, 2015." [JS at 17 (citing AR at 639-47, 662, 664).]

Defendant argues that the ALJ's RFC is supported by "normal physical exams and successful surgery," as well as by "various medical opinions, which the ALJ noted are largely consistent with a range of light work RFC." [JS at 11-12 (citing AR at 17-20, 47-48, 76-78, 109-11, 262, 399-402, 418-23, 488-90, 492, 571-72, 585, 671-72).] Defendant observes that of the five medical opinions relevant to plaintiff's claims, three of the doctors (Dr. Maze and the two state agency reviewing physicians in 2014) "had opinions that were largely less restrictive than the ALJ's RFC and two [Dr. Levine and Dr. Raju -- who issued their opinions in February 2016 and September 2015 respectively] had parts that were more restrictive." [Id.] Defendant suggests, therefore, that the ALJ "appropriately set out to resolve the conflicts in opinion" and resolved the conflicts on a function-by-function basis to determine an RFC that was "'best supported by the objective evidence as a whole.'" [JS at 12-13 (citations omitted).] That is, because Drs. Levine and Raju found that plaintiff could stand, walk, and sit for up to two hours a day, and could not lift more than ten pounds, and Dr. Maze and the state agency reviewers all found plaintiff could stand, walk, and sit for up to six hours a day, and could not lift more than twenty pounds, the ALJ appropriately determined that in light of the record evidence that showed plaintiff "needed no assistive device, had normal strength and gait, and [that his] surgery was followed by noted improvement," plaintiff could stand and/or walk for four hours out of an eight-hour day, sit for six hours, and lift and carry twenty pounds occasionally and ten pounds frequently. [JS at 12 (citations omitted).] Defendant also argues that contrary to plaintiff's "assertion that [his] condition worsened after Dr. Maze's examination, the record shows Plaintiff's condition improved after surgery, with no evidence of further spinal treatment after July 2015." [JS at 13-14 (citing AR at 20).] This lack of records after July 2015 "support[s] the ALJ's finding [and] do[es] not support Plaintiff's contention of continued back pain." [JS at 14-15.]

### b. Analysis

The opinions of Dr. Maze and the two reviewing physicians were all based on an incomplete record: the two reviewing physicians in 2014 only had portions of the record to review [AR at 106-07, 121-22], and Dr. Maze, who examined plaintiff in March 2014 and prepared her report on March 7, 2014, had no records to review -- not even the report from the x-ray she had ordered. [AR at 418, 419-22.] Indeed, Dr. Maze noted that plaintiff's "subjective complaints of chronic pain cannot be explained, but I have to check the findings of his examination." [AR at 422.] However, although Dr. Maze apparently requested an x-ray of plaintiff's cervical spine, the report of that x-ray was dated March 11, 2014, four days *after* she prepared her report. [AR at 418.] Among other things, that report reflected "mild degenerative disease from L2 to L5 and moderate degenerative disease with a vacuum disk phenomenon at L5-S1," as well as "moderate degenerative disease at C6-7." [Id.] In contrast, the opinions of Dr. Levine and Dr. Raju were based on the entire medical record, through and beyond plaintiff's cervical surgery.

Additionally, although the ALJ appears to have relied on the fact that plaintiff's records reflected that he "needed no assistive device, had normal strength and gait, and [that his] surgery was followed by noted improvement," as explained by Dr. Levine the fact that plaintiff exhibited "normal strength, normal gait, [and walked] without the use of an assistive device," indicated to Dr. Levine that "there was no objective evidence of any nerve root or spinal cord compromise" and, therefore, plaintiff's cervical condition *did not meet or equal a listing* -- not that he was otherwise capable of light work. [AR at 44-45.] In fact, Dr. Levine also testified that as of May 21, 2016, plaintiff's cervical spine had not fused "even if a listing level is not met or equaled during that period," and believed that a consultative examination with x-rays of the cervical spine may be needed "to document, in fact, if the fusion is solid and/or whether there may be any evidence of nerve root or spinal cord compromise as of the end of May 2016." [AR at 46.] Dr. Levine further stated that "even if the fusion is totally solid, and [plaintiff] is doing well with regard to [the] cervical spine, it's unlikely that he would be better than sedentary capable regardless of whether he's done well from that surgery." [Id.] He concluded that "allowing for the limitations of the documented degenerative changes of the cervical spine, thoracic spine, and lumbar spine, and marked obesity

. . . weigh[ing] 260 pounds, which is a BMI of 40.7 . . . [plaintiff] would really only be sedentary capable from 5/2012 until the present." [Id.] Moreover, as explained by plaintiff, after July 2015 he became seriously ill with stage 4 kidney disease, and that -- rather than his spinal conditions -- became the focus of his medical care at that time.

Although the ALJ (and defendant) suggest that a number of medical records support the ALJ's finding that plaintiff is capable of a range of light work, a review of those records reflects plaintiff's continuing pain and numbness in his upper and lower extremities; decreased sensation in the upper and lower extremities, and decreased motor strength in the upper extremities; need for future cervical surgery or lack of "evidence of solid anterior interbody fusion" in September 2015 (after the cervical surgery); epidural injections (four) and physical therapy with only temporary benefit; severe weight gain; and no relief from "conservative treatments." [See JS at 11-12; AR at 19-20, 398, 402, 418-23, 492, 549, 571-72, 585, 671-72.] Defendant's suggestion that because the majority (3 out of 5) of the medical opinions were "less restrictive" than the ALJ's RFC determination, that determination -- which fell in between the "less restrictive" 2014 opinions of Dr. Maze and the two state agency reviewers, and the "more restrictive" opinions of Dr. Levine and Dr. Raju in 2015 and 2016 -- was somehow more consistent with the objective medical evidence as a whole, is simply not supported by the very evidence cited by the ALJ and by defendant.

"An ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion, and [s]he must not succumb to the temptation to play doctor and make [her] own independent medical findings." See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (internal quotation marks, alterations, and citations omitted). But that appears to be what the ALJ has done here. Indeed, as noted by plaintiff [see JS at 15], rather than resolving conflicts in the record (if any), it appears that the ALJ simply "averaged" the various opinions regarding plaintiff's ability to stand and walk, thereby substituting her own opinion for the opinions of plaintiff's treating surgeon and the ME, both of whom had the benefit of the complete longitudinal record. Additionally, the ALJ did not discuss such factors as the nature, extent, and length of plaintiff's doctor-patient working relationship with Dr. Raju, which she should have done when she found that the treating

physician's opinion was not controlling.  <u>Trevizo</u>, 871 F.3d at 676.

The Court finds that the ALJ's reasons for discounting Dr. Levine's and Dr. Raju's opinions were not specific and legitimate or supported by substantial evidence in the record.  Remand is warranted on this issue.

## B.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that none of the reasons provided by the ALJ for discounting his subjective symptom testimony is specific, clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[7] plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted.  <u>See</u> <u>Trevizo</u>, 871 F.3d at 678 n.5; <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## <u>REMAND FOR FURTHER PROCEEDINGS</u>

The Court has discretion to remand or reverse and award benefits.  <u>Trevizo</u>, 871 F.3d at 682 (citation omitted).  Where no useful purpose would be served by further proceedings, or where

---

[7]    The Ninth Circuit in <u>Trevizo</u> noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required:  that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" <u>Trevizo</u>, 871 F.3d at 687 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, if the ALJ finds it warranted, the ALJ shall order a consultative neurological and/or orthopedic consultative examination, and/or any other consultative examination the ALJ finds warranted, with the appropriate specialist(s) being provided with all of plaintiff's medical records. Second, because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Levine and Dr. Raju, the ALJ on remand shall reassess the entire medical record, including, if applicable, the new consultative examination(s), the opinions of Dr. Levine and Dr. Raju, and all other medical evidence of record (past and present) relevant to plaintiff's claim for benefits. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Third, because the matter is being remanded for reconsideration of the medical opinion evidence, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, she must also reconsider plaintiff's subjective symptom testimony in accordance with SSR 16-3p and, based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons, in accordance with SSR 16-3p, if she discounts or rejects any testimony. See Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 487, 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination). Fourth, based on her reevaluation of the entire medical record and

plaintiff's subjective symptom testimony, the ALJ shall determine plaintiff's RFC and determine, at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a security guard as generally performed or as actually performed by plaintiff. If plaintiff is not so capable or, if applicable, the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.  See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  September 5, 2018

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE